UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINA V.,<br><br>        Plaintiff,<br><br>        v.<br><br>ANDREW M. SAUL, Commissioner of Social Security Administration,<br><br>        Defendant. | Case No. CV 18-3332-SP<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.

## __INTRODUCTION__

On April 20, 2018, plaintiff Gina V. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of supplemental security income ("SSI"). The parties have fully briefed the matters in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one disputed issue for decision, whether the Administrative Law Judge ("ALJ") properly considered plaintiff's subjective symptom testimony.

Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 5-11; *see* Memorandum in Support of Defendant's Answer ("D. Mem.") at 2-11.

Having carefully studied the parties' memoranda on the issue in dispute, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly considered plaintiff's testimony. Consequently, the court affirms the decision of the Commissioner denying benefits.

## II.
## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 34 years old on the alleged disability onset date, completed high school through the eleventh grade. AR at 63, 97. Plaintiff has no past relevant work. *Id*. at 81.

Plaintiff had filed three prior applications for SSI on June 13, 2006, August 31, 2007, and October 6, 2010, all of which were denied at the initial level.[1] *Id*. at 98.

On October 8, 2013, plaintiff filed a fourth application for SSI, alleging an onset date of June 15, 1999 due to bipolar disorder, hypothyroidism, and a lower back injury. *Id*. at 97. The Commissioner denied plaintiff's application initially, after which he filed a request for a hearing. *Id*. at 112-16, 120-21.

On September 14, 2016, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id*. at 59-89. The ALJ also heard testimony from Howard J. Goldfarb, a vocational expert. *Id*. at 81-87. On November 1, 2016, the ALJ denied plaintiff's claim for benefits. *Id*. at 37-47.

---

[1] Plaintiff filed a request for hearing after the denial of his second application but the ALJ dismissed the request after plaintiff failed to appear at the hearing. AR at 92-93. Petitioner then filed a request for review, which was denied by the Appeals Council as untimely. *Id*. at 95-96.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since October 8, 2013, the application date. *Id*. at 39.

At step two, the ALJ found plaintiff suffered from the following severe impairments: hypothyroidism; lumbar spine degenerative disc disease and spondylosis; cervical spine degenerative disc disease; hypertension with sinus tachycardia; chronic obstructive pulmonary disease ("COPD"); asthma with dyspnea; hypoxia; emphysema; hyperventilation syndrome; diabetes mellitus; hypoglycemia; bipolar disorder; major depressive disorder; mood disorder; schizophrenia; polysubstance dependence; borderline personality disorder; and anxiety disorder. *Id*.

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id*. at 40.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[2] and determined she had the RFC to perform less than the full range of medium work, with the limitations that plaintiff could: lift, carry, push, and pull 50 pounds occasionally and 25 pounds frequently; stand and walk six hours in an eight-hour work day; sit six hours in an eight-hour workday; engage in postural activities such as climbing, balancing, stooping, kneeling, crouching, and crawling on a frequent basis; and have occasional interaction with the general public. *Id*. at 41. The ALJ precluded plaintiff from concentrated exposure to pulmonary irritants such as

---

[2] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

fumes, odors, dust, and gases. *Id*.

The ALJ found, at step four, that plaintiff had no past relevant work. *Id*. at 46.

At step five, considering plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including packer, laborer in stores, and production assembler. *Id*. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 47.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-4. The ALJ's decision stands as the final decision of the Commissioner.

## III.
## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's

finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## **DISCUSSION**

Plaintiff argues the ALJ impermissibly rejected her subjective symptom testimony. P. Mem. at 5-11. Specifically, plaintiff contends the ALJ's reasons for discounting her testimony were not supported by substantial evidence. *Id*.

The ALJ must make specific credibility findings, supported by the record. Social Security Ruling ("SSR") 96-7p.[3] To determine whether testimony concerning symptoms is credible, the ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of

---

[3] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). The ALJ may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

At the first step, the ALJ here found plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 41. At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's testimony. The ALJ found plaintiff's testimony to be not entirely credible because: (1) the objective evidence did not support her allegations; (2) she received conservative treatment; (3) she failed to comply with her treatment plan; and (4) her daily activities were inconsistent with her allegations. *See id*. at 42-45.

At the hearing, plaintiff testified that she suffered from, among other things, chronic lower back pain, anxiety, "thyroidism," diabetes, and emphysema, and was considered a schizophrenic. *See id*. at 65-67, 77. Plaintiff testified due to her lower back pain, she could only sit for about 20 minutes and stand for about 20 minutes. *See id*. at 63-64. Plaintiff also testified that it was hard to be around other people, she had a lot of anxiety because of her thyroid, and she got overwhelmed easily. *See id*. at 65-67. Plaintiff did not believe she could perform even simple work because it hurt to stand, her pace was too slow, and she could not stay focused. *Id*. at 75. Plaintiff testified that she could cook, shop, and walk a mile,

and during a typical day, she walked around, watched television, and sat. *See id*. at 63-64, 78.

Plaintiff also made other statements concerning her symptoms. In a December 2013 Function Report, plaintiff reported she could prepare meals, do housework when "feeling good," went outside everyday, and could shop. *See id.* at 220-21. On a daily basis, plaintiff engaged in reading, writing, singing, drawing, and watching television. *Id*. at 222. Plaintiff reported that she enjoyed spending time with her family. *See id*. Plaintiff indicated her impairments affected her ability to, among other things, lift, squat, walk, sit, kneel, reach, talk, complete tasks, and concentrate. *Id*. at 223. At the July 2014 consultative examination, plaintiff told the examining physician she could only sit for five minutes or stand and walk for five minutes. *Id*. at 340.

The ALJ's first reason for an adverse credibility finding was plaintiff's alleged sitting and standing limitations were inconsistent with the objective findings. *Id*. at 45; *see Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001) (the lack of objective medical evidence to corroborate pain allegations is one factor, in conjunction with others, the ALJ may consider in his or her credibility determination). The ALJ acknowledged an August 2015 MRI of the cervical spine reflected degenerative osteophytic changes with 1-2mm impingement on the thecal sac, imaging of the lumbar spine showed moderate to advanced degenerative changes, and the consultative examiner observed reduced range of motion in the back. *See* AR at 42; *see also id.* at 432, 439. But the ALJ noted there was no indication that these impairments required significant functional limitations. The few treatment records containing physical examinations reflect normal or minimal objective findings. The consultative examiner observed plaintiff had a negative straight leg raising test; palpation along the spinous process did not elicit pain or evidence of spasm; and plaintiff's motor function, strength, and gait were normal.

*See id.* at 342-43. During other physical examinations, physicians observed plaintiff had full range of motion in the neck, no tenderness, no difficulty walking, and otherwise normal findings.[4] *See, e.g., id.* at 30, 374, 380, 384, 458. As such, the ALJ's finding that the objective medical evidence did not support plaintiff's alleged physical limitations was a clear and convincing reason supported by substantial evidence for discounting her testimony.[5]

The second reason cited by the ALJ for discounting plaintiff's testimony was she received conservative treatment for her back pain. *Id* at 42; *see Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment.") (internal quotation marks and citation omitted). Plaintiff argues she did not receive conservative treatment for her psychiatric impairments. P. Mem. at 7. But the ALJ only cited conservative treatment for plaintiff's back pain as a basis for the adverse credibility finding. *See* AR at 42. The ALJ noted plaintiff was only treated with pain medication. Contrary to the ALJ's findings, it does not appear physicians prescribed any course of treatment for plaintiff' back pain, much less prescription pain medication. In March 2013, plaintiff indicated to the emergency room nurse she took Norco, but no treatment note in the record reflects such a prescription and

---

[4] Although plaintiff alleged an onset date of June 15, 1999, the ALJ's decision focused on the period from the application date forward. *See* AR at 39. Other than three sets of treatment notes, plaintiff did not submit medical records from the period prior to the application date. *See id.* at 275-311. During the March and August 2013 emergency room visits, plaintiff complained of back pain, but other than a finding of pain with range of motion, the physicians did not indicate any objective findings. *See id.* at 299.

[5] The ALJ also found the record only supported mild to moderate mental limitations. *See* AR at 43-44. Plaintiff does not discuss these findings and only argues the ALJ may not reject his subjective complaints of pain based on lack of objective medical evidence.

8

the emergency room treatment note similarly contains no notation prescribing pain medication. *See* AR at 300. Instead, the hospital provided plaintiff standard discharge instructions regarding back pain, instructing her, among other things, to rest, avoid prolonged sitting, and take acetaminophen or ibuprofen as needed. *Id*. at 302-03. In July 2014 and August 2015, plaintiff was neither taking any medication for her back pain nor receiving any other form of treatment such as physical therapy. *See id*. at 341, 423. Consequently, although there was no evidence to support the ALJ's finding that plaintiff's back pain was treated with pain medication, the ALJ's underlying finding that plaintiff's testimony should be discounted because she was treated conservatively was supported by substantial evidence. Plaintiff's back pain was so mild that her physicians chose not to even prescribe pain medication to treat it.

Third, the ALJ cited plaintiff's failure to comply with her treatment plan as a basis for an adverse credibility finding. *See id*. at 42-44; *Tommasetti*, 533 F.3d at 1039. The record contains substantial evidence of non-compliance. When plaintiff was hospitalized in August 2015 and February 2016 for respiratory issues, it was due to the fact that she failed to take her medication. *See id*. at 42-43, 382, 407, 421. Plaintiff also failed to take her medication on several other occasions that did not result in hospitalization. *See id*. at 356, 358, 364. Indeed, when plaintiff took her medication as prescribed, her symptoms were well-controlled. *See, e.g., id*. at 76, 333, 362; *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for SSI benefits.").

Finally, the ALJ discounted plaintiff's testimony because her activities of daily living were inconsistent with her alleged symptoms. *See* AR at 43-44; *Valentine v. Astrue*, 574 F.3d 685, 693 (9th Cir. 2009) (the ALJ properly discounted plaintiff's credibility because his daily activities suggested his claims

9

about the severity of his limitations were exaggerated); *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (in making a credibility determination, an ALJ may consider inconsistencies between a claimant's testimony and conduct). Plaintiff testified she could only sit and stand for 20 minutes at a time and told the consultative examiner she could only sit, stand, and walk for five minutes. *See* AR at 63-64, 340. Notwithstanding the fact that these statements were inconsistent with each other, her statement that she could only walk for five minutes was inconsistent with her testimony that she could walk a mile. *See id*. at 64; *see also Bunnell*, 947 F.2d at 346 (an ALJ "may discredit claimant based on inconsistencies in the testimony"). Moreover, plaintiff reported she went out everyday, which is seemingly inconsistent with an ability to walk or stand for only five minutes at time. *See id*. at 221. Thus, substantial evidence supported the ALJ's findings that at least some of plaintiff's activities were inconsistent with the severity of the limitations alleged.

In sum, the ALJ cited multiple clear and convincing reasons supported by substantial evidence for finding plaintiff's testimony less than entirely credible. As such, the ALJ did not err in discounting plaintiff's subjective allegations.

## V.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the complaint with prejudice.

DATED: September 30, 2019

SHERI PYM
United States Magistrate Judge

10